UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELLIOT STEED, | : | |
| Plaintiff | : | CIV. ACTION NO. 3:26-CV-573 |
| v. | : | (JUDGE MANNION) |
| WILLIAM HALL, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983. For the reasons set forth below, the complaint will be dismissed without prejudice, and plaintiff will be granted leave to file an amended complaint limited to one claim.

## I.    BACKGROUND

Plaintiff, Elliot Steed, brings the instant case pursuant to 42 U.S.C. §1983, alleging various civil rights violations during his ongoing incarceration in Luzerne County Correctional Facility ("LCCF"). (Doc. 1).

The complaint alleges numerous events and incidents that purportedly violated Steed's rights. The complaint first alleges that defendants Hall, Minziel, Mininger, Tucker, and Sweet "have placed poison in [Steed's] food, water, juice, cakes, cookies, bread, etc." (*Id.* at 7). The poison allegedly caused him "severe heart failure, liver failure, and now cancer." (*Id.*) The

complaint alleges that "medical staff" is denying him treatment, including chemotherapy. (*Id.*) The complaint further alleges that the medical staff falsified documents to indicate that Steed was declining treatment on the days they refused to treat him. (*Id.*)

Second, Steed alleges that he was "beat up" by defendants Stoole, Belch, Read and Paul on an unspecified date and that it "left [him] with a bloody mouth, bloody nose, and swollen eye." (*Id.*) A nurse named "Nancy" purportedly stated that Steed was "okay and didn't need to be sent out to the hospital." (*Id.*)

Third, Steed alleges that defendant Belch "tased" him on an unspecified date, which caused him to "fall out" and "smack" his face "onto the steel desk" and then "flop around like a fish out of water." (*Id.* at 8). Defendant Belch purportedly denied him medical treatment after the incident. (*Id.*)

Fourth, Steed alleges that he was placed in a restraint chair for more than 48 hours by unspecified correctional officers on an unspecified date before defendant Stoole "choke[d] [him] out" and then rolled him to a cell and left him there without medical attention. (*Id.*)

Fifth, Steed alleges that while he was in his cell in a psychiatric ward on an unspecified date, defendant Shoemaker pepper sprayed him, which

2

made him unable to breathe or open his eyes. (*Id.*) Defendant Shoemaker then removed the mattress from Steed's cell, which forced him to sleep on the cell floor and resulted in swelling in his hips. (*Id.*)

Sixth, Steed alleges that while he was in the prison's psychiatric unit on an unspecified date, he went on a hunger strike. (*Id.*) Six days into the hunger strike, the prison's head nurse, "Stefanie," came to his cell and offered him a "supplement drink." (*Id.*) He drank the drink and one of his hands "turned dark purple indicating heart problems." (*Id.*) Later in the day his heart purportedly "had a[n] irregular beat because the drink had some glue type substance that ended up blocking [his] heart valve." (*Id.*)

Seventh, Steed asserts that while he was taking a shower on an unspecified date he "got real dizzy" and asked for medical attention. (*Id.*) The correctional officer on duty called the prison's deputy warden, who purportedly ordered another correctional officer to pepper spray Steed because he would not move. (*Id.*) The deputy warden then ordered the officers to drag Steed back to his cell and leave him there without medical attention. (*Id.*)

Eighth, Steed alleges that on an unspecified date, he asked to speak with a lieutenant about the incidents that had occurred and the ongoing denial of medical care. (*Id.* at 9). Correctional officer Krouse ordered him to

3

go back to his cell and then "began to get hostile." (*Id.*) Krouse allegedly called for backup officers, who slammed Steed to the floor, pepper-sprayed him, and then took him "back to lock-up." (*Id.*)

Ninth, Steed alleges that while he was in administrative custody on an unspecified date, he was ordered out of his cell without any explanation. (*Id.*) Steed asked the officer ordering him out why he was being removed from the cell, but the officer purportedly told him that he did not need to give him an answer. (*Id.*) Steed was then taken to speak with a member of the prison's psychiatric team. (*Id.*) Approximately 15-20 minutes later, defendants Belch, Renfer, Paul, and Calvey allegedly entered his cell and "slammed" him off the top bunk onto the floor, handcuffed him, tased him, and then told him to "walk normal" or he would be tased again. (*Id.*)

Tenth, Steed alleges that he was arrested on a charge of domestic violence in December 2023 and placed in LCCF on January 4, 2024. (*Id.*) Steed alleges that since his incarceration began his criminal charges have been dismissed and he has not been taken to any hearings, but LCCF has refused to release him. (*Id.*) Steed asserts that he has been "accused" of killing his mother, but has not been charged with that crime. (*Id.*) Steed asserts that LCCF continuing to hold him for the killing in the absence of a formal charge is "a defamation of character." (*Id.* at 10). Steed further alleges

4

that correctional officers Harris, Johnson, Crawford, Torreto, Wilk, and McCaffrey are not allowing him to attend court proceedings. (*Id.*) Steed has purportedly brought this to the attention of James Willer the prison's "head of supervision," who has purportedly told Steed that he is "not in control" of whether correctional officers call him for court hearings. (*Id.*)

Steed states that at the time of writing the complaint he is "on [his] deathbed" and is "only in jail for indirect criminal contempt from a protection from abuse order." (*Id.*) Correctional officers are purportedly sharing Steed's "phone pin" with the individual who has a protection from abuse order against Steed which is "stopping" him from getting released. (*Id.*)

The complaint asserts that Steed is severely ill due to the "poison the officers have placed in [his] food," which has caused him to lose approximately 90 pounds and be barely able to get out of bed. (*Id.* at 11). Steed asserts that the medical staff's failure to send him for outside medical care constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment. (*Id.*)

Steed advances claims for violation of his First, Sixth, Eighth, and Fourteenth Amendment rights by various employees at LCCF. (*Id.* at 11-15). He seeks damages and various forms of injunctive relief. (*Id.* at 16, 18).

## II.  DISCUSSION

This court must review a complaint when "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. *Id.* §1915A(b)(1). The court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis. Id.* §1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); *Smith v. Delaware*, 236 F. Supp.3d 882, 886 (D. Del. 2017).

To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" to show that his claim is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *Id.* However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

## A.   Joinder

At the outset, the court will consider whether Steed's claims are misjoined in violation of the Federal Rules of Civil Procedure. Under Rule 20, claims against multiple defendants may be joined in the same action only if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Steed's complaint plainly fails to meet this standard. The complaint alleges ten separate incidents that share no common factual connection other than the fact that they occurred in the same prison. Steed has also failed to advance a single justification for joining the claims in a single lawsuit. Accordingly, the court concludes that the ten claims are misjoined in violation of Rule 20.

A district court has two options when a plaintiff has misjoined claims: (1) dismiss the misjoined claims without prejudice on "just terms" or (2) sever the claims into separate lawsuits. Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). The statute of limitations for dismissed claims is not tolled because the initial complaint is treated "as if it never existed." *Id.* (quoting *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005)). When, on the other hand, the claims are severed, "the suit simply continues against the severed defendant in another guise." *Id.* (citing *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999)).

District courts have discretion to choose whether misjoined claims should be dismissed or severed, but may only dismiss the claims if doing so would be just, "that is, if doing so 'will not prejudice any substantial right'" of the plaintiff. *Id.* (internal emphasis omitted) (quoting *Sabolsky*, 457 F.2d at 1249). "Hence, a court must analyze the consequences of a

9

dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance." *Id.*

Having reviewed the complaint, the court finds that none of the claims are properly joined with one another. The court will accordingly allow the case to proceed only with respect to the first claim raised in the complaint, which pertains to the allegation that defendants Hall, Minziel, Mininger, Tucker, and Sweet poisoned Steed. All other claims will be dismissed as misjoined without prejudice to Steed's right to assert them in new lawsuits.[1] The court analyzes the merits of this claim below.

### B.    Merits

As noted above, the court's merits analysis proceeds only to the claim that defendants Hall, Minziel, Mininger, Tucker, and Sweet poisoned Steed. (*See* Doc. 1 at 7). This claim plainly fails to state a claim upon which relief may be granted. The complaint alleges in conclusory fashion that the defendants "placed poison" in Steed's food and that the "poison" caused him "heart failure, liver failure, and . . . cancer," but does not allege when this

---

[1] The court has analyzed whether dismissal, rather than severance, would harm Steed's ability to comply with the applicable statute of limitations. This court cannot conclude that Steed would be unable to meet the applicable statute of limitations for any of his claims because he has plainly failed to allege any dates as to when the alleged actions occurred. (*See* Doc. 1 at 7-11).

occurred, what poison was used, how Steed knows that the defendants placed poison in his food, or why he thinks the poison caused his medical conditions. (*See id.*) Thus, as presently pleaded, the complaint appears to allege nothing more than unsupported speculation that Steed was poisoned. This is insufficient and the claim will be dismissed.

Before dismissing a civil rights complaint for failure to state a claim, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The court will grant leave to amend the poisoning claim because it cannot conclude on the present record that amendment would be inequitable or futile.

## III.    CONCLUSION

For the foregoing reasons, the court will dismiss Steed's complaint and grant him leave to file an amended complaint limited to his claim that defendants Hall, Minziel, Mininger, Tucker, and Sweet poisoned him. An appropriate order shall issue.

Malachy E. Mannion
United States District Judge

Dated: 5/20/26
26-573-01

11